IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JESSE NIELSEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05-320-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| NEW CINGULAR WIRELESS PCS, LLC, | ) | |
| formerly doing business as AT&T Wireless, | ) | |
| | ) | |
| Defendant. | ) | |

Elizabeth Farrell
Attorney at Law
P. O. Box 3614
Hillsboro, OR  97123

  Attorney for Plaintiff

Calvin L. Keith
Julie E. Markley
PERKINS COIE, LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128

  Attorneys for Defendant

JONES, Judge:

In this action for employment discrimination, plaintiff Jesse Nielsen brings three claims against his former employer, defendant New Cingular Wireless, LLC: (1) violation of the federal Family Medical Leave Act ("FMLA"); (2) violation of the Oregon Family Leave Act ("OFLA"); and (3) common law wrongful discharge. Plaintiff claims that defendant wrongfully terminated him for allegedly abusing his medical leave when he left work early on March 17, 2004, to care for his pregnant wife.

Defendant moves for summary judgment on all claims (# 19). For the reasons stated below, I deny defendant's motion in its entirety.[1]

## FACTUAL BACKGROUND

The parties generally agree to the following facts. Both plaintiff and his wife, Tiffany Nielsen, began working for defendant in March 2000. Tiffany still works for defendant. Plaintiff's job, in one of defendant's call centers, involved answering telephone calls from customers who needed "escalated" treatment; i.e., who needed supervisor assistance.

Between March 2001 and December 2003, plaintiff received a number of written and verbal warnings for conduct that included rude and unprofessional behavior toward a customer (written warning, December 2002), misuse of defendant's e-mail system (written warning, September 2001), and attendance issues spanning the period from March 2001 through December 2003. In his last few months of employment, however, plaintiff demonstrated improved attendance and had been taken off the December 2003 written warning in February

---

[1] Defendant represents that plaintiff has stipulated to dismissal of his claim for punitive damages. No such stipulation appears in the record, but if true, plaintiff should notify the court in writing.

2 - OPINION AND ORDER

2004 after completing 60 days of work without an absence. Plaintiff's Response to Defendant's Concise Statement, ¶ 4.

At the end of November 2003, Tiffany learned she was pregnant. In February 2004, she applied for and received approval of intermittent family leave due to pregnancy-related nausea. About the same time, plaintiff informed his supervisor, Brian Haney, that his wife was having problems with her pregnancy. Haney suggested that plaintiff apply for family medical leave, which he did in March 2004.[2]

On March 17, 2004, the day central to this action, plaintiff was scheduled to work his regular shift from noon to 8:30 p.m. Tiffany was scheduled to work her regular shift from 8:30 a.m. to 3:30 p.m. That morning, Tiffany was not feeling well and decided to go into work with plaintiff at the beginning of his shift. About two hours later, Tiffany contacted[3] plaintiff and told him she was feeling dizzy but would try to stay a little longer. She again contacted plaintiff a half hour later and told him that her symptoms were worse and she needed him to take her home. Plaintiff spoke to his supervisor Haney at approximately 3:00 p.m., informing Haney that his wife was having pregnancy-related problems and he needed to take her home and care for her. Haney responded "do what you have to do."

Plaintiff logged off of his computer, a process that takes approximately five minutes. He then called his wife, a call that was logged and recorded by defendant at 3:06 p.m.[4] Plaintiff

---

[2]  There is a factual dispute concerning the timing of the request, but the dispute does not appear to be material to the parties' arguments for and against summary judgment.

[3]  Plaintiff uses the word "contact," but does not clarify the means, be it e-mail, telephone or through some other means.

[4]  The parties agree that in 2000, plaintiff "consented in writing to Cingular's
(continued...)

told his wife that he would be coming by her office to get the car keys so he could drive around and pick her up in front of her building. Tiffany asked if plaintiff had spoken with Haney, and he told her he had and leaving was fine. Tiffany then told plaintiff that she would not leave until the end of her shift at 3:30 p.m. She asked him if he had already logged off his computer, which he had, and asked him if he could log back on until she finished with her shift. Plaintiff responded that he was coming to her office to get the car keys. Plaintiff left work at approximately 3:07 p.m.

Plaintiff explains that he is paid only when logged onto the computer. He did not want to log on again that day because it would have taken approximately 15 minutes to re-boot and log in to all his systems, then another five minutes to log off again. He states that he knew it would take him about 10 minutes to get the car keys from Tiffany, walk to the garage, and drive to her office. He was very concerned about his wife, who experienced serious episodes of dizziness which, he states, frequently resulted in her blacking out. Plaintiff took his wife home and cared for her all day. According to plaintiff, she did not recover from that particular episode for two days.

In early April 2004, Haney reviewed the tape of the telephone conversation between plaintiff and his wife and plaintiff's computer logout report from March 17. Haney took the tape to his supervisor, Paula Fahey, who listened to it and suggested they consult their human resources manager, Lynne Mayo. Haney, Fahey, and Mayo met. Mayo reviewed plaintiff's file

---

⁴(...continued)
random monitoring and recording of his calls from company telephones." Defendant's Concise Statement of Material Facts, ¶ 3; Plaintiff's Response to Defendant's Concise Statement of Material Facts, ¶ 1.

and Tiffany's logout report, and ultimately concluded that plaintiff "had consistently demonstrated a substandard pattern of integrity and commitment to his job duties." Defendant's Concise Statement, ¶¶ 17-18. Haney decided to terminate plaintiff "for misconduct in stating that he had to leave work early to care for his wife when in fact his wife at that time did not need his care." Defendant's Concise Statement, ¶¶ 19-21. In the separation request paper work, the "final incident" is described as follows:

> Employee has a history of conduct issues including, but not limited to: misuse of e mail; manipulation of processes to inflate his stats; negative attitude; internal and external customer complaints -- all of which have been coached. Most recently, the employee was recorded talking with his pregnant wife, who is also an employee here -- and for whom the employee has an intermittent leave for the purpose of caring for her pregnancy relate[d] []issues, as needed. The employee was recorded (As a standard procedure for internal call evaluations), and was heard to be stating that he had "logged out" and was leaving the building and would be driving around to pick-her-up [sic]. She repeatedly stated that she was not ready to leave work. She even suggested that he "log-back-in", and wait until she was ready to go, but he refused. Given that his leave was for her care, it is a manipulation of the leave conditions for the employee to[] be utilizing the benefit when wife was not in need, and was actually herself, working. Despite much coaching and discipline, this employee blatantly and repeatedly chooses to conduct himself in an [unreasonable] and unprofessional manner.

Declaration of Julia Markley, Exh. 23, p. 1.

Defendant terminated plaintiff effective April 12, 2004. According to plaintiff, before his termination and during the termination meeting, no one asked him about the events of March 17. "No inquiries were made and no investigation undertaken." Plaintiff's Response to Defendant's Concise Statement, ¶ 19.

## DISCUSSION

As mentioned, plaintiff brings three claims, FMLA, OFLA, and common law wrongful discharge.

5 - OPINION AND ORDER

1.  FMLA claim

Briefly stated and as relevant to this case, the FMLA provides twelve weeks of job-protected leave to eligible employees who must take leave to care for a family member with a serious health condition. 29 U.S.C. § 2612. It is unlawful for an employer to interfere with, restrain, or deny an employee's exercise of FMLA rights or to discharge the employee in retaliation for exercising his or her rights. 29 U.S.C. § 2615(a). An employer interferes with an employee's FMLA rights if it refuses to authorize leave, discourages the employee from taking leave, or discharges the employee for taking qualified leave. 29 C.F.R. § 825.220.

Defendant contends that summary judgment on this claim is appropriate for two reasons. First, defendant argues that plaintiff cannot establish a causal connection between his taking of FMLA leave and his termination. Defendant's theory is that the March 17 telephone recording "shows that Plaintiff's wife did not need his care when Plaintiff left work that day." Memorandum in Support of Defendant's Motion, p. 8. Defendant concludes from this that plaintiff's absence between 3:07 and 3:30 p.m. "was not covered family medical leave." Reply Memorandum, p. 2.

Defendant's second contention is that it had a legitimate, nondiscriminatory reason for terminating plaintiff, specifically, "misconduct in claiming the need to leave work early to care for his wife when, in fact, his wife did not need his care." Defendant's Memorandum, p. 9.[5]

---

[5] Defendant's argument overlooks Ninth Circuit authority holding that the McDonnell Douglas burden-shifting analysis does not apply in a case where an employee is subjected to negative consequences simply because he or she has used FMLA leave. Instead, to survive summary judgment in such cases, the plaintiff must show that there is a triable issue of fact as to whether FMLA leave was impermissibly considered as a factor in the termination. Xin Liu v. Amway Corp., 347 F.3d 1125, 1136-37 (9th Cir. 2003).

6 - OPINION AND ORDER

Based on the record before this court, a reasonable jury could conclude that after Haney told plaintiff "do what you have to do," plaintiff logged off his computer and, despite his wife's statement that she wouldn't leave until 3:30 p.m., left work at 3:07 p.m. to retrieve the car keys and the car so he could pick her up in the front of her building at 3:30 for the purpose of taking care of her. There is no question that defendant did, in fact, terminate plaintiff for taking leave on March 17. Neither defendant nor anything in the record suggests that had events on March 17 been different, defendant would have terminated plaintiff anyway due to his earlier history of attendance and other problems. Consequently, summary judgment on plaintiff's FMLA claim is denied.

2.  OFLA claim

Like the FMLA, the OFLA creates a right for eligible employees to take unpaid leave to care for a family member with a serious health condition. O.R.S. 659A.159. To the extent possible, the OFLA is to be construed "in a manner that is consistent with any similar provisions of the [FMLA]." O.R.S. 659A.186(2).

Defendant argues that plaintiff's OFLA claim must be dismissed because retaliation claims are not cognizable under the OFLA. According to the Oregon Court of Appeals, a claim of OFLA retaliation is cognizable. Yeager v. Providence Health Sys. Oregon, 195 Or. App. 134, 96 P.2d 862 (2004). Judges in this court, however, have taken different positions on this issue. Compare Cameron v. T-Mobile USA Inc., 2005 WL 1106370 (D.Or. April 28, 2005)(King, J.)(rejecting Yeager and holding that retaliation claim is not cognizable under OFLA), with Bond v. State Farm Mutual Automobile Ins. Co., 2005 WL 67067 at *1 (D.Or. Jan. 11, 2005)(Haggerty, J.)(OFLA retaliation claim allowed to go forward, citing Yeager); see also

7 - OPINION AND ORDER

Stewart v. Sears, Roebuck and Co., CV 04-428-HU (Supplemental Findings and Recommendation, April 5, 2005)(citing opinions of Judges Ashmanskas, Marsh, King and Brown in holding that OFLA does not provide a civil remedy for retaliation), adopted (Order, June 29, 2005)(Mosman, J.).

I need not address the conflicting rulings on this issue because plaintiff does not allege a pure retaliation claim. Instead, plaintiff's claim, in essence, is that defendant interfered with his OFLA rights and discriminated against him by characterizing his OFLA leave as misconduct and then terminating him for that misconduct, not that defendant retaliated against him for taking qualified family leave. See Complaint, ¶ 24. Plaintiff's claim thus is distinguishable from cases alleging retaliation claims. Consequently, defendant's motion for summary judgment on plaintiff's OFLA claim is denied.

3. Wrongful Discharge

Plaintiff's third claim, for wrongful discharge, alleges that defendant discharged him in retaliation for pursuing employee related rights "which are of important public interest and/or are recognized by statute * * * in that Plaintiff had a right to request and take medical leave * * *." Complaint, ¶ 29.

In addition to defendant's other arguments discussed above, i.e., that plaintiff cannot show a causal connection and that defendant terminated him for the legitimate, nondiscriminatory reason of misconduct, defendant contends that plaintiff's wrongful discharge claim fails because plaintiff cannot show that he was discharged for "fulfilling a societal obligation" or for "pursuing a right related to his role as an employee and the right is one of

important public interest indicated by constitutional and statutory provisions and caselaw." Memorandum in Support of Defendant's Motion, p. 11.

Case law does not support defendant. In <u>Xin Liu v. Amway Corp.</u>, 347 F.3d 1125, 1137 (9th Cir. 2003), the Ninth Circuit concluded that discharging an employee in violation of the California Family Rights Act constitutes wrongful discharge in violation of public policy and, "[a]s its federal counterpart, violation of the FMLA also must constitute a violation of public policy." <u>See also</u> <u>Bond</u>, <u>supra</u>, 2005 WL 67067 at ** 5, 9 (Haggerty, J., allowing plaintiff's wrongful discharge claim based on violations of FMLA and OFLA to go forward); <u>see also</u> <u>Washington v. Fort James Operating Company</u>, 110 F. Supp.2d 1325, 1334 (D.Or. 2000) (permitting plaintiff to go forward with a wrongful discharge claim based on violation of the FMLA; common law wrongful discharge claim not preempted because the statutory remedies do not include emotional distress damages).

Consequently, I deny defendant's motion for summary judgment on plaintiff's wrongful discharge claim.

## CONCLUSION

Defendant's motion for summary judgment (# 19) is denied. Plaintiff is ordered to notify the court in writing if he in fact stipulates to dismissal of his claim for punitive damages.

IT IS SO ORDERED.

DATED this 31st day of January, 2006.

      /s/ Robert E. Jone
      ROBERT E. Jones
      U.S. District Judge